IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| EUGENE SCOTT, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:05cv23-C |
| | ) | (WO) |
| JO ANNE BARNHART, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social

Security Act,  42 U.S.C. §§ 401 et seq., alleging that he was unable to work because of a

disability.  His application was denied at the initial administrative level.  The plaintiff then

requested and received a hearing before an Administrative Law Judge ("ALJ").  Following

the hearing, the ALJ also denied the claim.  The Appeals Council rejected a subsequent

request for review.  The ALJ's decision consequently became the final decision of the

Commissioner of Social Security (Commissioner).[1]  *See  Chester v. Bowen*, 792 F.2d 129,

131 (11th Cir. 1986).  The case is now before the court for review pursuant to 42 U.S.C. §§

405 (g) and 1631(c)(3).  Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the

parties have consented to the United States Magistrate Judge conducting all proceedings in

---

[1]  Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

this case and ordering the entry of final judgment.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A) a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3)  Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3]  *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. The Issues

**A. Introduction.** The plaintiff was 47 years old at the time of the hearing before the ALJ and had completed twelfth grade. (R. 234). His prior work experience includes work as a forklift operator. (*Id.*) The plaintiff alleges that he became disabled on August 28, 2002, when his sleep apnea prevented him from working. Following the hearing, the ALJ concluded that the plaintiff has no severe medically determinable impairment and thus, was not disabled. (R. 265). After consideration of additional evidence, the Appeals Council upheld the determination of the ALJ. (R. 3).

3

The plaintiff presents two issues for the Court's review. As stated by the plaintiff, the issues are as follows:

1.    The Commissioner's decision should be reversed, because the requirements for determining whether [or] not impairment is severe were misapplied.

2.    The Commissioner's decision should be reversed, because the ALJ erred by concluding that Mr. Scott was, in the alterative, capable of returning to his past relevant work as a fork-lift operator when to do so would cause a danger to Mr. Scott and his co-workers. (Pls' Br. at 6-7).

## IV. DISCUSSION

The plaintiff argues that the ALJ failed to properly evaluate his impairment of sleep apnea at step 2 of the sequential evaluation. The ALJ concluded, at step 2 of the analysis, that the plaintiff's sleep apnea was not a severe impairment because the condition was remediated with treatment. The severity step is a threshold inquiry which allows only "claims based on the most trivial impairment to be rejected." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). Indeed, a severe impairment is one that is more than "a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Bowen v. Yuckert*, 482 U.S. 137, 154 fn. 12 (1987) citing with approval Social Security Ruling 85-28 at 37a.

A physical impairment is defined as "an impairment that results from anatomical, physiological or pyschological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(c). The

4

plaintiff has the "burden of showing [his] impairment is "severe" within the meaning of the Act." *McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986).   In finding that the plaintiff's sleep apnea was not a "severe impairment," the ALJ reviewed the plaintiff's medical records.   "Unless the claimant can prove, as early as step two, that []he is suffering from a severe impairment, []he will be denied disability benefits."   *Id.* at 1031.   After carefully reviewing the medical records, the court concludes that substantial evidence supports the ALJ's conclusion that the plaintiff's sleep apnea does not constitute a "severe impairment" because his condition has been remediated with treatment.

The plaintiff argues that he suffers from "very severe sleep apnea" and he continues to suffer "from severe daytime somnolence which inhibits him from participating from useful employment."  (Pl's Br. at 6-7).   In addition, the plaintiff complains that he suffers from "severe fatigue and has problems staying awake during the day."  (*Id.*)  The ALJ reached the following conclusion.

> At Step 2 of the sequential evaluation, as reflected by the documentary medical evidence summarized above, the undersigned finds that the preponderance of the evidence does not establish that the claimant possessed either singular or combined physical or mental impairments imposing significant work-related exertional or non-exertional limitations for a continuous period of twelve months during the period at issue.

> In reaching this conclusion, the Administrative Law Judge has considered the claimant's allegations of the medically-determinable impairments of bilateral hearing loss and sleep apnea.   However, within 12 months of his alleged disability onset, these impairments were remediated by use of properly fitted hearing aids and nasal surgery, ear tubes and a CPAP machine, respectively. The claimant himself reported a marked improvement in his hearing and on multiple occasions told Dr. Cosper that his snoring and shortness of breath were much better since his nasal surgery.

(R. 265).

The ALJ's determination is supported by substantial evidence. The plaintiff has been a patient of Dr. Cosper since July 1998. (R. 178). On April 8, 2002, Scott presented to Dr. Cosper complaining of malaise and fatigue. (R. 155). He presented with the same complaints on May 7 and May 14, 2002. (R. 152, 150). On July 15, 2002, Scott complained of malaise and fatigue and that he was sleeping a lot. (R. 147). Dr. Cosper referred Scott for a sleep study. (R. 148). On August 29, 2002, the plaintiff underwent testing and was diagnosed with very severe obstructive sleep apnea by Dr. Alan Purvis. (R. 105). On September 3, 2002, Scott was referred for CPAP mask[4] setup and instruction. (R. 145-46). On September 8, 2002, the plaintiff was retested using a CPAP mask. (R. 100). Dr. Purvis opined that the plaintiff experienced "an excellent response" with the use of the mask and "[s]ignificant [i]mprovement in Oxygen Saturation with placement of nasal CPAP." (*Id*.). On September 17, 2002, Dr. Cosper noted that the plaintiff was doing better with the CPAP mask. (R. 143).

Nonetheless, the plaintiff opted for surgery to correct his sleep apnea and nasal obstruction. (R. 111). On November 14, 2002, the plaintiff underwent septoplasty, turbinectomy, and uvulopatopharynoplasty. (R. 109-113). Thereafter, Dr. Cosper's office notes indicate that the plaintiff's shortness of breath and snoring were "much better" since the surgery. (R. 138, 135, 133, 131, 220, 222). Since the surgery, the plaintiff has not

---

[4] A CPAP mask is a continuous positive airway pressure mask used to treat sleep apnea.

complained to Dr. Cosper of "sleeping a lot."  (R. 10, 12, 14, 17, 135, 133, 131, 216, 218, 220, 222).  There is no indication in the medical records that the plaintiff has complained about his sleep apnea since the surgery.  Accordingly, the court concludes that the ALJ properly evaluated the medical evidence and substantial evidence supports his conclusion that the plaintiff's sleep apnea is not a severe impairment that imposes significant work-related exertional or non-exertional impairments for a continuous twelve-month period.

To the extent that the plaintiff complains that the ALJ failed to properly credit Dr. Cosper's November 20, 2003, letter regarding his ability to work, he is entitled to no relief on this basis.  On November 20, 2003, after the hearing before the ALJ, Dr. Cosper wrote the following letter.

> Mr. Scott is a 47 year-old black male with severe obstructive sleep apnea.  He uses a cpap machine at night but still has severe daytime somnolence, which inhibits him from participating in any useful employment.  He has seen Dr. Ernest Riley, ENT, as well as, Dr. Allen Purvis, Neurologist. Mr. Scott also has hypercholesterolemia, hypertension, and chronic fatigue and malaise, which stem from his severe obstructive sleep apnea.  His symptoms have been extremely severe since mid 2002, which has required him to discontinue all work.  It is impossible for him to sustain any reasonable work.  He has episodes of falling asleep during the daytime, secondary to obstructive sleep apnea, which would make it dangerous for him to operate machinery, etc.  Mr. Scott has worked hard all of his life, and finds it very discouraging that he is unable to rejoin the work force.  In my opinion, it would be detrimental to him or his co-employees if he returned to work.

(R. 8).

The law is well-settled; the opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so.  *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985).

However, the weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986).

In the instant action, Dr. Cosper's conclusions are not supported by his own records. As previously noted, Dr. Cosper's notes indicate that the plaintiff's shortness of breath and snoring were "much better" since the surgery. (R. 138, 135, 133, 131, 220, 222). Since the surgery, the plaintiff has not complained to Dr. Cosper of "sleeping a lot." (R. 10, 12, 14, 17, 135, 133, 131, 216, 218, 220, 222). More importantly, however, his office note of January 22, 2003, contradicts his conclusion that it is "impossible for him to sustain any reasonable work." On January 22, 2003, Dr. Cosper specifically noted that Scott was excused from work from January 21, 2003 until March 1, 2003. (R. 134). Thereafter, there is no other notation in Dr. Cosper's records indicating that Scott cannot or should not return to work.

Furthermore, although Dr. Cosper opines that Scott "still has severe daytime somnolence, which inhibits him from participating in any useful employment" and "[h]e has episodes of falling asleep during the daytime," there is no support in the medical records for his opinion. First, there is no notation *anywhere* in the medical records to indicate that the plaintiff falls asleep during the day. Second, Dr. Cosper's opinion fails to consider his own records that Scott is doing much better since he underwent surgery. Finally, there has been no further sleep study or other testing that would support Dr. Cosper's opinion that the Scott

continues to suffer from the effects of severe sleep apnea despite surgery and use of a CPAP mask.  Consequently, the court concludes that Dr. Cosper's November 20, 2003, opinion that Scott is unable to work is not supported by the medical evidence of record.  After conducting an independent review of the record, the court concludes that the ALJ did not err as a matter of law in concluding that the plaintiff is not disabled and substantial evidence supports that determination.[5]

## V.  CONCLUSION

The court has carefully and independently reviewed the record, and concludes that the plaintiff failed to prove that his sleep apnea constitutes a severe impairment for the purpose of receiving disability insurance benefits.   The court further concludes that the decision of the Commissioner is supported by substantial evidence.

A separate final judgment affirming the Commissioner's decision will be entered.

Done this 23rd day of September, 2005.


            /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[5]   Because the court concludes that the ALJ did not err in concluding at step 2 of the sequential evaluation that the plaintiff is not disabled,  the court pretermits discussion of the plaintiff's argument regarding his ability to return to his past relevant work.